# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4044

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| Lawrence Charles Bowman, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 2004
Filed: August 24, 2004

_____

Before MURPHY and FAGG, Circuit Judges, and GOLDBERG,* Judge of the United States Court of International Trade.

_____

PER CURIAM.

In February 2003 an Iowa grand jury indicted Lawrence Charles Bowman on federal drug charges. An arrest warrant was sent to California, where Bowman was living. The warrant did not describe Bowman or provide any identifying information other than his name. On March 3, 2003, Bowman was arrested in Sacramento, California. At his initial appearance there, Bowman was represented by appointed counsel and waived the opportunity for a hearing to determine whether he was the

_____

*The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

same person named in the indictment or warrant and thus show the Government charged the wrong person.  <u>See</u> Fed. R. Crim. P. 5(c)(3)(D)(ii).  Bowman was released on bond and directed to report to the Southern District of Iowa for arraignment a week later.  Bowman waived his personal appearance at arraignment.

On March 24, 2003 Bowman retained Iowa counsel who entered an appearance.  On May 22, 2003, Bowman filed a motion for continuance of trial, which the district court[**] granted.   Finally, on July 18, 2003, more than four months after Bowman's arrest, Bowman's attorney sent the Government a letter stating:

> We have reviewed the discovery in the Bowman file.  It appears that there is insufficient evidence to establish that my client . . . is the same individual in question with regard to the criminal activity outlined in the indictment.   If you have other information that supports your identification in this matter, I would certainly appreciate receiving it.  Further, if you have any photographs of any type that support your position, I would like to review [them].

Without waiting for a response to the letter, Bowman sought and received a second continuance later that month.  In August, Bowman filed a notice of alibi, a motion in limine, and notice of intent to use business records.  He filed a trial brief and exhibit/witness list.  Then, on August 22, Bowman's attorney sent the prosecutor a letter stating:

> We talked last week concerning a resolution of Mr. Bowman's case.  As I have indicated to you in the past, we believe the government has the wrong person indicted in this case.  As a matter of fact, I spoke with the co-defendant's attorney from Michigan. It was the third time that he and I had spoken about this issue.  I asked him for a description from his client of what Mr. Bowman looked like. The description does not in any way match my client . . . .   We have been able to document Mr. Bowman's whereabouts on each occasion when the government is

---

[**]The Honorable Ronald L. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

alleging that he engaged in illegal conduct. . . . I am asking the government to drop all charges against Mr. Bowman and that it be done immediately. . . . Please review your file and let me know if you would like the photographs of Mr. Bowman in order that we can substantiate that he is not the same person who was in fact distributing drug paraphernalia around the United States.

The Drug Enforcement Administration (DEA) investigated and presented a photographic spread to a cooperating witness in mid-September. On September 23, 2003, the prosecutor was notified the witness could not identify Bowman as the person involved in the criminal activity. The next day, the Government informed defense counsel of its intent to drop the charges against Bowman and, at the Government's request, the district court dismissed the charges on October 1, 2003. The Government later determined the proper defendant was one Lawrence Carl Bowman.

Bowman then filed a request for attorney's fees under the Hyde Amendment, which authorizes federal courts to "award to a prevailing party [in a criminal case], other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." 18 U.S.C. § 3006A. Bowman asserted the Government's position had been frivolous, the Government knew of its mistake as early as March of 2003 or by July 2003 at the latest, and the Government's action or lack of action was not reasonable. Bowman did not contend the Government lacked a reasonable basis for the indictment, but instead argued the Government did not act quickly enough to dismiss the charges. To support his Hyde Amendment claim, Bowman sought an ex parte hearing. See id. (to decide whether or not to award fees or costs under the Hyde Amendment, "the court, for good cause shown, may receive evidence ex parte and in camera"). Along with his motions seeking fees and a hearing, Bowman presented exhibits including an Internal Revenue Service (IRS) interview from the Government's discovery file containing a physical description of the proper defendant

that did not match Bowman's mug shot after his arrest, and statements by his codefendant's attorney that by July 2003, the codefendant had informed the Government that Bowman was not the person involved in the criminal activity. Bowman pointed out the warrant for his arrest did not contain a description, address, or other identifying information; he lived in Northern California and had no connection with the place identified by the Government informant as the proper defendant's place of residence in Southern California; and no search warrant was ever issued for his residence. The district court denied a hearing and the request for fees, noting Bowman had waived his right to an identity hearing and the Government had taken reasonable and prompt steps to resolve the issue after Bowman raised the identity issue on July 18, 2003. Bowman appeals the denial of his Hyde Amendment claims, and we affirm.

Bowman first contends the district court should have held an ex parte hearing before deciding his Hyde Amendment claim. Bowman seeks to learn from Government counsel and several DEA agents when they knew Bowman's identity was an issue. The district court held that Bowman failed to establish good cause for a hearing because, in light of Bowman's waiver of an identification hearing, it was unnecessary to determine if the government knew identity was an issue before July 18, 2003. In the district court's view, the waiver led the Government to believe it had indicted the correct person and, until put on notice by Bowman in July, the Government had no reason to look into the identification issue.

Given the discretionary language of the Hyde Amendment and the district court's unique familiarity with the litigation, we defer to a district court's Hyde Amendment rulings. United States v. Beeks, 266 F.3d 880, 883 (8th Cir. 2001) (per curiam). In this case, we simply cannot say the district court abused its discretion in concluding Bowman failed to show good cause warranting a hearing. See id. Although the Government's discovery file contained a description of the proper defendant in a three-year-old IRS interview, the description was not at total odds with

Bowman's mug shot. Further, given Bowman's waiver of his personal appearance in Iowa, the prosecutor had not seen Bowman and had no reason to question his identity until July, when the prosecutor received Bowman's letter and learned Bowman did not match a description given by the codefendant of the person involved in the criminal activity. The mere fact that the Government charged the wrong defendant without more does not establish good cause for an ex parte hearing, particularly as here, when Bowman asserts the only issue is when the Government knew it had the wrong person and its reasonableness afterwards, not that the government acted without a basis to believe the charge could not be proven.

Bowman also argued that if the district court did not grant an ex parte hearing, the district court should hold the record open until his codefendant's criminal matter was resolved, so the codefendant could state when he informed the DEA agent that Bowman was not the correct codefendant. The district court had no reason to allow a fishing expedition, however. Bowman had no idea what the codefendant would say, and the codefendant's attorney did not give the conflicting description of the proper defendant to Bowman's attorney until July.

Aside from the district court's refusal to grant a hearing, Bowman also contends the district court abused its discretion in declining to award fees under the Hyde Amendment. Bowman contends the Government's prosecution of him was frivolous, a term that is not defined in the statute. We have stated a position is frivolous for the purposes of the Hyde Amendment when the position is utterly without foundation in law or fact. Beeks, 266 F.3d at 883-84; see United States v. Knott, 256 F.3d 20, 29-30 (1st Cir. 2001) (distinguishing the terms "vexatious" and "frivolous" in Hyde Amendment; for frivolousness, no improper motive need be shown); United States v. Heavrin, 330 F.3d 723, 729 (6th Cir. 2003) (same); United States v. Sherburne, 249 F.3d 1121, 1126 n.4 (9th Cir. 2001) (same). Thus, although the Hyde Amendment targets prosecutorial misconduct rather than prosecutorial mistake, United States v. Braunstein, 281 F.3d 982, 995 (9th Cir. 2002), we stated in

Beeks that "a prosecution . . . so utterly without foundation in law or fact as to be frivolous'" amounts to prosecutorial misconduct. Beeks, 266 F.3d at 883-84.

Here, we do not know whether the Government's case against Bowman was utterly without foundation in fact rendering it frivolous, see Beeks, 266 F.3d at 883-84, because Bowman has failed to show the prosecution was pursued without any reasonable foundation for the belief that the Government might prevail on the indictment. See Heavrin, 330 F.3d at 729; Knott, 256 F.3d at 29-30. We need not determine this issue, however, because Bowman's Hyde Amendment claim fails on another ground. To prevail on his Hyde Amendment claim, Bowman also has the burden to show there are no special circumstances making the award unjust. Braunstein, 281 F.3d at 994; see United States v. Aisenberg, 358 F.3d 1327, 1339 n.18 (11th Cir. 2004). Although the district court focused on whether the Government's conduct in prosecuting Bowman was frivolous, it is clear from the court's opinion that it believed a fee award would be unjust in this case. The court observed that when Bowman finally gave the Government notice in July that he was the wrong defendant, the Government acted reasonably in investigating the matter and dismissing the charges against Bowman before trial. We agree. Until Bowman first questioned his identification in a July letter, and brought evidence that the Government had charged the wrong person to the prosecutor's attention in July and August, the Government was justified in relying on Bowman's waiver of the identification issue at his initial appearance before a magistrate following his arrest in California. Once put on notice by Bowman, the Government took Bowman's claim seriously, confirmed Bowman was the wrong defendant, and asked the district court to dismiss the case. Given that Bowman did not bring the identity issue to the attention of the Government until more than four months after his arrest, and the case was dismissed after an investigation revealed the Government had indeed charged the wrong person, it would be unjust to hold the Government responsible for the payment of fees that would have been avoided if Bowman had put the Government on notice of its mistake sooner.

Because we conclude the district court did not abuse its broad discretion in denying Bowman's Hyde Amendment claim, <u>see</u> <u>Beeks</u>, 266 F.3d at 883, we affirm.

_____