# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1709

_____

Howard Paul Garrison,      *
     *
         Appellant,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Southern District of Iowa.
Jerry Burt,      *
     *
         Appellee.      *

_____

Submitted: November 18, 2010
Filed: March 8, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Howard Garrison appeals the district court's[1] denial of habeas relief from his Iowa convictions for two counts of first-degree murder. Garrison argues (1) his retrial violated double jeopardy, (2) prosecutorial misconduct denied his due process right to a fair trial, and (3) his convictions violated due process because the evidence was insufficient to prove he killed the victims. We affirm the district court's denial of Garrison's 28 U.S.C. § 2254 petition.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

## I. BACKGROUND

### A. Factual Background

On October 24, 2002, the bodies of John Caswell, Jr. and Steven Emerson were discovered at Caswell's farm outside of Knoxville, Iowa. Drug activity, including the manufacture, sale, and use of methamphetamine, occurred at the farm before the murders. Garrison was a regular visitor to the farm and witnesses testified to seeing him there on the day of the murders.

Police investigated and determined ballistic and other evidence linked Garrison to the murders. In particular, investigators found one spent .22 shell casing lodged in the vent on the hood of Garrison's car matching other shell casings found at the murder scene. Police arrested Garrison and placed him in the Marion County Jail. According to state witness Brian Martin, an inmate at the Marion County Jail, Garrison confessed to Martin that he killed Caswell and Emerson in a dispute involving drugs.

### B. First State Trial

The State of Iowa (state) charged Garrison with two counts of first-degree murder for the deaths of Caswell and Emerson. The case proceeded to trial in November 2003. Garrison moved in limine to suppress evidence showing Garrison used, shared, or sold Oxycontin, arguing such evidence was speculation, improper opinion evidence and highly prejudicial. The state argued the evidence was necessary in order to establish motive and that Martin and Garrison had a prior relationship, which was probative as to why Garrison confided in Martin. The trial court agreed with the prosecutor and allowed the evidence. During direct examination, however, Martin testified he knew Garrison "through other people" and had not known Garrison personally until they were in jail together. Garrison moved for a mistrial, alleging the prosecutor "knew or was negligent or intentionally misrepresented what [Martin] was going to testify to" in order to get the Oxycontin evidence before the jury. The district

court denied Garrison's motion for a mistrial but issued a limiting instruction to the jury.

Garrison appealed. Finding the trial court abused its discretion in not declaring a mistrial because the references to Oxycontin were irrelevant and presumptively prejudicial, the Iowa Court of Appeals reversed Garrison's convictions and remanded for a new trial. See State v. Garrison (Garrison I), No. 04-0141, 2006 WL 138280, at *11, *19 (Iowa Ct. App. Jan. 19, 2006) (unpub. table disp.).

### C.    Second State Trial

On remand, Garrison moved to dismiss the trial information, arguing the prosecutor "intentionally engaged in conduct . . . designed to force Garrison to move for a mistrial" by gaining admission of Martin's Oxycontin testimony. The trial court denied Garrison's motion, concluding the prosecutor's mistake was unintentional and not intended to force a mistrial. The court reasoned "[o]nce it became apparent [Garrison] and Martin did not have a prior relationship, the State dropped the issue[,] did not mention it during its closing argument[,]" and did not object when Garrison requested a limiting instruction.

Garrison's second trial commenced in October 2006. The parties agreed to avoid references to the first trial. During direct examination, Medical Examiner Marvin Van Haaften testified about his examination of the victims' bodies and his estimation of the victims' times of death. Garrison attempted to impeach Van Haaften's testimony by pointing out inconsistencies in the times underlying Van Haaften's estimations. In an apparent effort to rehabilitate Van Haaften's testimony, the prosecutor asked, "This wasn't the first time you came into court today to determine a time of death in this case, is that correct?" Garrison immediately objected and demanded a mistrial based on prosecutorial misconduct. The trial court found the question "dangerously close to a reference to a first trial," but denied Garrison's motion. The court did, however, strike the question, sanction the prosecutor by barring

him from asking any further questions of Van Haaften, and give the jury a cautionary instruction to "completely disregard" the question. The jury returned a guilty verdict on both counts of first-degree murder, and the trial court sentenced Garrison to two consecutive life sentences without parole.

Garrison again appealed. As relevant here, Garrison challenged (1) the district court's denial of his motion to dismiss on double jeopardy grounds, (2) denial of his motion for a new trial because of prosecutorial misconduct, and (3) the sufficiency of the evidence supporting the convictions. The Iowa Court of Appeals affirmed the convictions. State v. Garrison (Garrison II), No. 06-1983, 2008 WL 2902024, at *7 (Iowa Ct. App. July 30, 2008) (unpub. table disp.). Garrison sought further review with the Iowa Supreme Court, which denied Garrison's application.

### D. Habeas Corpus Petition to Federal District Court

Garrison petitioned for a writ of habeas corpus in the district court. See Garrison v. Burt (Garrison III), 707 F. Supp. 2d 945, 949 (S.D. Iowa 2010); see also 28 U.S.C. § 2254. The district court denied habeas relief, holding, in part: (1) double jeopardy did not bar Garrison's second trial; (2) Garrison's due process rights were not violated in the second trial because of prosecutorial misconduct; and (3) the evidence presented at the second trial was constitutionally sufficient to support Garrison's convictions. Id. at 958, 962-63. The district court granted Garrison a certificate of appealability as to the above-mentioned issues. See 28 U.S.C. § 2253.

## II. DISCUSSION
### A. Procedural Matters
#### 1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may only grant a writ of habeas corpus to a state prisoner if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or . . . was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[W]e will grant relief only if the state court decision is both incorrect *and* unreasonable." Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010). We presume the Iowa court's factual findings are correct and it is Garrison's burden to rebut this presumption by clear and convincing evidence. See id.; § 2254(e)(1). We review the federal district court's findings of fact for clear error and its conclusions of law de novo. See Cole, 623 F.3d at 1187.

### 2. Exhaustion

"An application for a writ of habeas corpus filed in federal court by a state prisoner 'shall not be granted unless it appears that the applicant has exhausted the remedies in the courts of the State.'" Welch v. Lund, 616 F.3d 756, 758 (8th Cir. 2010) (quoting 28 U.S.C. § 2254(b)(1)(A)). Having presented all of his constitutional claims to the Iowa Court of Appeals and applied for further review with the Iowa Supreme Court, which declined review, Garrison met the exhaustion requirement. Garrison was not required to avail himself of Iowa's post-conviction process as to these three issues. See Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992) ("To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding."); Clinkscale v. Carter, 375 F.3d 430, 438 (6th Cir. 2004).

### B. Merits
### 1. Double Jeopardy

Garrison argues the second trial violated his double jeopardy rights because, during the first trial, the prosecutor intentionally or recklessly stated Martin knew Garrison and acquired Oxycontin from him despite Martin saying otherwise in his pretrial deposition.

"The Double Jeopardy Clause . . . protects a criminal defendant from repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671 (1982)

-5-

(footnote omitted). With limited exceptions, double jeopardy does not bar retrial after a defendant successfully moves for mistrial. Id. at 673. A defendant may invoke double jeopardy after a mistrial *only* where the prosecutor's misconduct "was intended to provoke the defendant into moving for a mistrial." Id. at 679. "Absent intent to provoke a mistrial, a prosecutor's error in questioning a witness, . . . and even extensive misconduct do[es] not prevent reprosecution." United States v. Beeks, 266 F.3d 880, 882 (8th Cir. 2001) (per curiam).

In considering Garrison's motion to dismiss prior to the second trial, the trial court stated:

> It is the belief of this Court . . . that the evidence overwhelmingly supports the notion that the mistake was not intentional. Once it became apparent that the defendant and Martin did not have a prior relationship, the State dropped the issue and did not mention it during its closing argument. Furthermore, when the defense requested a limiting instruction, the State did not object. Based on the aforementioned facts, the Court concludes that the State did not intend to force a mistrial when it misinformed the Court that the defendant and Martin had a prior relationship.

The record supports the trial court's conclusion. Garrison fails to point to any evidence the prosecutor's acts were intended to provoke a mistrial. Instead, Garrison relies on an inference that an experienced prosecutor had to know "if his representations regarding the prospective testimony of Martin proved to be false, a mistrial request would follow." This inference falls far short of the clear and convincing evidence necessary to conclude the state courts were incorrect and unreasonable in finding the prosecutors did not intend to provoke Garrison into moving for a mistrial. Because Garrison failed to demonstrate "how the trial was going poorly for the [state] or any reason why the [state] would wish to risk a double jeopardy dismissal by provoking a mistrial at that stage of the proceedings," United States v. Radosh, 490 F.3d 682, 685 (8th Cir. 2007), we find no constitutional violation.

-6-

## 2. Prosecutorial Misconduct

Garrison argues misconduct occurred during the prosecutor's redirect examination of Medical Examiner Van Haaften which violated his Fourteenth Amendment due process right to a fair trial. According to Garrison, the prosecutor improperly referred to the first trial when he asked Van Haaften, "This wasn't the first time you came into court today to determine a time of death in this case, is that correct?" Garrison contends this unquestionably referred to the prior trial and this "created unfair prejudice . . . because the jury was left to speculate as to the events of the first trial."

We disagree with Garrison's contention that the jury would necessarily surmise there was a prior trial based on the prosecutor's admittedly inartfully crafted question. The question was vague, and the jury could have believed the unanswered question referred to something other than a previous trial—such as a prior deposition or testimony before a grand jury—or the jury simply may not have understood or cared about the question at all.

Regardless, we do not believe the question was "so inappropriate as to make the trial fundamentally unfair," Rousan v. Roper, 436 F.3d 951, 960 (8th Cir. 2006), or was "so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial," James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), as required to grant habeas relief. We also find it highly improbable the question affected the jury's deliberations and guilty verdict. See Rousan, 436 F.3d at 960 (explaining that in order to grant habeas relief, there must be a reasonable probability an error influenced the verdict so that, absent the error, the jury would have decided the case differently).

### 3.    Sufficiency of the Evidence

Garrison contends the state failed to prove beyond a reasonable doubt Garrison killed Caswell or Emerson because (1) the case relied on circumstantial evidence; (2) the state's witnesses' testimony was unreliable; and (3) "[o]ther illegal activity contributed to the crimes."

Constitutionally, sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Because AEDPA only allows us to grant habeas relief if there was "an unreasonable application of [] clearly established Federal law," 28 U.S.C. § 2254(d)(1), we may grant relief only if we find the Iowa Court of Appeals' conclusion that the evidence satisfied the Jackson sufficiency of evidence standard "both incorrect *and* unreasonable." Cole, 623 F.3d at 1187; see Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited").

In finding the evidence sufficient, the Iowa Court of Appeals noted Martin's testimony regarding Garrison's confession to the murder and also stated:

> Garrison was at the scene of the crime in the timeframe when the murders were committed. He owned ammunition similar to that used in the murders. A spent cartridge found on the hood of his car matched the spen[t] cartridges found at the scene of the murder. The murders were committed with a .22 caliber gun. Although witnesses had seen Garrison in possession of [a] .22 Ruger, it could no longer be found after the murders. Considering all of this evidence, we conclude there is sufficient evidence to support the convictions in this case.

Garrison II, 2008 WL 2902024, at *7. We find the Iowa Court of Appeals' conclusion neither incorrect nor unreasonable. Garrison's contention that the case relied on circumstantial evidence is of no moment because "circumstantial evidence is just as

probative as any other type of evidence." United States v. Crumley, 528 F.3d 1053, 1065 (8th Cir. 2008); see State v. Bentley, 757 N.W.2d 257, 262 (Iowa 2008) (explaining that, under Iowa law, "direct and circumstantial evidence are equally probative").

Garrison's challenges to the credibility of the state's witnesses' testimony are unavailing. Garrison argues Van Haaften's testimony as to the time of the victims' death was unreliable because of inconsistencies in his account, as well as inferior methods and training. Garrison also contends Martin's testimony was unreliable and had no probative value because he "was a career criminal, a heavy user, manufacturer and distributor of methamphetamine, . . . [and] an informant for authorities" with a reason to lie. These arguments are unpersuasive because "it is the province of the fact-finder, not this court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Skillicorn, 475 F.3d at 977 (quoting Jackson, 443 U.S. at 319). We also reject Garrison's claim that the drug activity taking place at the farm suggests somebody else could have committed the murders and creates reasonable doubt as to Garrison's guilt. See id.; United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006) (finding a reasonable jury may reject an "exculpatory hypothesis in favor of guilt beyond a reasonable doubt"). The evidence was constitutionally sufficient to support Garrison's convictions for the murders.

## III.   CONCLUSION

We affirm the district court's denial of Garrison's § 2254 petition.

_____